2026 IL App (1st) 251462

No. 1-25-1462

Opinion filed July 28, 2026

Second Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| KIMBERLY SCOTT, | ) | Appeal from the |
| | ) | Illinois Human Rights |
| Petitioner, | ) | Commission. |
| | ) | |
| v. | ) | No. 2023 CR 0772 |
| | ) | |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, THE | ) | |
| DEPARTMENT OF HUMAN RIGHTS, and | ) | |
| STARBUCKS COFFEE COMPANY, | ) | |
| | ) | |
| Respondents. | ) | |

_____

PRESIDING JUSTICE VAN TINE delivered the judgment of the court, with opinion.
Justices Ellis and D.B. Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner Kimberly Scott appeals an Illinois Human Rights Commission (Commission) order sustaining the dismissal by the Department of Human Rights (Department) of her charge of workplace racial discrimination against her employer, Starbucks Coffee Company (Starbucks). The Commission found that the Department lacked jurisdiction over petitioner's charge because she did not submit the Equal Employment Opportunity Commission (EEOC) determination to the Department within 30 days of receiving it, which section 7A-102(A-1)(1)(iv) of the Illinois Human

Rights Act (Act) (775 ILCS 5/7A-102(A-A1)(1)(iv) (West 2022)) requires. For the following reasons, we affirm. We also sanction petitioner's attorney Mason Cole for submitting briefs containing false citations and quotations that are the product of artificial intelligence (AI) hallucinations. Below, we set out the sanctions we impose and our bases for imposing them.

¶ 2                                    I. BACKGROUND

¶ 3      This case involves the Department, which is an investigative agency, and the Commission, which is an adjudicative agency. See *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 21 (1999); *Jabbari v. Human Rights Comm'n*, 173 Ill. App. 3d 227, 232 (1988). Essentially, the Department decides whether there is sufficient evidence to bring a charge of workplace discrimination, and the Commission decides whether the complainant has proved his or her charge of discrimination. *Jabbari*, 173 Ill. App. 3d at 232. The Act establishes the Department and the Commission as separate but complementary agencies to enforce antidiscrimination laws. 775 ILCS 5/7-101, 8-102 (West 2022).

¶ 4      Petitioner is an African American woman who worked at a Starbucks in downtown Chicago. This case arises out of a series of workplace incidents between March and June 2022, in which petitioner allegedly misgendered and had verbal confrontations with a coworker. Following a meeting with supervisors, petitioner apologized for misgendering her coworker. Thereafter, a Starbucks vice president issued petitioner a "corrective action memorandum" and reminded her to be respectful toward her coworkers.

¶ 5      On July 11, 2022, petitioner filed discrimination charges against Starbucks with both the Department and the EEOC. She alleged that Starbucks disciplined and harassed her based on her race. Pursuant to the Act and the Illinois Administrative Code (Code), the EEOC investigated the

charge first. See 775 ILCS 5/7A-102(A-1)(1) (West 2022) ("If the EEOC is the governmental agency designated to investigate the charge first, the Department shall take no action until the EEOC makes a determination on the charge \*\*\*."); 56 Ill. Adm. Code 2520.490(a)(1), (2) (2014) (when a complainant dual files charges with the EEOC and the Department, "[t]he charge will be initially investigated by the EEOC," and "[t]he Department will not take any action on the charge until the EEOC issues its final determination"). On August 8, 2022, the EEOC dismissed petitioner's charge and issued a right to sue letter.

¶ 6 On December 15, 2022, a Department investigator e-mailed petitioner to obtain additional information about her complaint. On December 19, 2022, petitioner informed the investigator that the EEOC had issued a right to sue letter. She also stated that she "plan[ned] to file a federal lawsuit for retaliation."

¶ 7 On January 11, 2023, the Department sent petitioner a letter acknowledging its receipt of the filing of her discrimination charge. Relevant here, the letter stated:

> "After the EEOC issues its findings, if you want the Department to take any further action on your charge, you must send the Department a copy of the EEOC's findings within 30 days after service of the EEOC's finding on you.
>
> \*\*\*
>
> If you received the EEOC's findings prior to receipt of this letter, you have 30 days from the date of this letter to send the Department a copy of the EEOC's findings.
>
> \*\*\*
>
> Your failure to timely provide the EEOC's findings to the Department will result only in the Department closing your file."

¶ 8    On January 30, 2023, petitioner e-mailed the EEOC's determination to the Department and asked it to investigate her charge. On February 3, 2023, the Department acknowledged receipt of the EEOC's determination. On March 30, 2023, the Department notified petitioner that it was extending the time for its investigation.

¶ 9    On June 20, 2024, the Department dismissed petitioner's charge, apparently on the mistaken belief that she had filed an employment discrimination lawsuit against Starbucks. See 775 ILCS 5/7-109.1(1) (West 2024) (Department may dismiss a charge "if the complainant has initiated litigation in a federal or State court for the purpose of seeking final relief on some or all of the issues that are the basis of the charge"). Petitioner sought review before the Commission. On October 1, 2024, the Commission vacated the Department's dismissal and remanded for further investigation.

¶ 10    The Department investigated and held a factfinding hearing on October 25, 2024. On October 28, 2024, the Department dismissed petitioner's charge due to a lack of substantial evidence. The Department explained that there was no dispute petitioner misgendered her coworker and was disciplined accordingly, and it found no connection between that discipline and petitioner's race. The Department's order did not address its jurisdiction.

¶ 11    Petitioner again requested review before the Commission. In response, the Department acknowledged for the first time that it lacked jurisdiction to investigate petitioner's charge. The Department argued that the EEOC issued its determination on August 8, 2022, and section 7A-102(A-1)(1)(iv) required petitioner to submit that determination to the Department within 30 days. Petitioner submitted the EEOC's determination to the Department on January 30, 2023, 175 days after August 8, 2022, so the Department did not have jurisdiction over her charge.

¶ 12    On July 1, 2025, the Commission sustained the dismissal of petitioner's charge based on the Department's lack of jurisdiction. The Commission agreed with the Department's jurisdictional analysis set out above. In addition, the Commission found that, even if the Department had jurisdiction, it properly dismissed petitioner's charge due to a lack of substantial evidence.

¶ 13    On July 28, 2025, petitioner filed a "motion to reconsider" before the Commission. She argued that she complied with the Department's January 11, 2023, letter instructing her to submit the EEOC's determination within 30 days of that letter. She also contended that both the Department and the Commission acted as though the Department had jurisdiction over her charge until her second request for review, when both agencies concluded for the first time that the Department in fact did not have jurisdiction. The record does not reflect the disposition of that motion, but petitioner's brief claims that the Commission denied it.

¶ 14    On July 29, 2025, petitioner timely sought judicial review of the Commission's July 1, 2025, order sustaining the dismissal of her charge. See 775 ILCS 5/8-111(B)(1) (West 2024) (a complainant may obtain judicial review of the Commission's final order by filing a petition for review in the appellate court within 35 days of the date the Commission served the decision upon the complainant); Ill. S. Ct. R. 335(a) (eff. July 1, 2017) (same); 56 Ill. Adm. Code 5300.460(e)(2022) (same).

¶ 15                                    II. ANALYSIS

¶ 16    Petitioner challenges the Commission's order sustaining the dismissal of her charge based on the Department's lack of jurisdiction and a lack of substantial evidence. We review the Commission's final order, not the Department's findings. *Peck v. Department of Human Rights*,

234 Ill. App. 3d 334, 338 (1992). But before turning to petitioner's arguments, we must address her attorney's multiple citations of AI-hallucinated legal authority.

¶ 17                                    A. Petitioner's Violation of Supreme Court Rules

¶ 18    Respondents request that we strike petitioner's brief and dismiss this appeal due to her noncompliance with Illinois Supreme Court Rule 341(h) (eff. Oct. 1, 2020). Specifically, respondents submit that petitioner's opening brief (1) misquotes both the Act and the Code and (2) contains a statement of facts that is argumentative and does not properly cite the record. We decline to strike petitioner's brief and dismiss this appeal pursuant to Rule 341(h), but we impose sanction against petitioner's attorney Mason Cole as set out below.

¶ 19                                    1. False Statutory Quotations

¶ 20    Rule 341(h)(5) requires that, "[i]n a case involving the construction or validity of a statute," the appellant must include "the pertinent parts of the provision verbatim, with a citation of the place where it may be found, all under an appropriate heading." Ill. S. Ct. R. 341(h)(5) (eff. Oct. 1, 2020). This case involves section 7A-102(A-1)(1)(iv) of the Act and section 2520.490 of title 56 the Code, both of which require a complainant to submit the EEOC's determination to the Department within 30 days of receiving it. 775 ILCS 5/7A-102(A-1)(1)(iv) (West 2022); 56 Ill. Adm. Code 2520.490(a)(3), (b)(4) (2014). Petitioner's briefs do not address either of those provisions.

¶ 21    Instead, petitioner misquotes inapplicable statutes and fabricates statutory language. Petitioner's brief's "Statutes Involved" section claims that section 7A-102(D)(2) of the Act provides:

"The Department shall conduct a full investigation of the allegations set forth in the charge and shall determine whether substantial evidence exists that a civil rights violation has been committed."

Section 7A-102(D)(2) actually provides:

"Upon review of the [Department's] report, the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed. The determination of substantial evidence is limited to determining the need for further consideration of the charge pursuant to this Act and includes, but is not limited to, findings of fact and conclusions, as well as the reasons for the determinations on all material issues. Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2022).

¶ 22    Similarly, petitioner claims that section 5300.530(b) of the Code provides:

"A request for reconsideration shall state specifically the grounds claimed and shall be supported by relevant documentation. Reconsideration may be granted where the request demonstrates (1) new or newly discovered evidence that could not have been presented earlier, or (2) error of law or fact that affected the outcome."

In truth, section 5300.530(b) provides:

"The Administrative Law Judge shall rule on all proper motions and objections by any party from the time the Judge is assigned the matter by the Chief Administrative Law Judge or selected by the Parties electing to proceed under the alternative hearing procedure until

the Judge's recommended decision and/or Final Order is filed with the Commission or issued to the Parties." 56 Ill. Adm. Code 5300.530(b) (1996).

¶ 23    Respondents identified the two false quotations discussed above, but petitioner's brief also claims that section 8-111(B)(1) of the Act provides:

"Any complainant or respondent aggrieved by a final order of the Commission may obtain judicial review thereof in the Appellate Court for the district in which the alleged civil rights violation occurred, in accordance with the provisions of the Administrative Review Law, as modified by Supreme Court Rule 335."

Section 8-111(B)(1) actually provides:

"Any complainant or respondent may apply for and obtain judicial review of a final order of the Commission entered under this Act by filing a petition for review in the Appellate Court within 35 days from the date that a copy of the decision sought to be reviewed was served upon the party affected by the decision. If a 3-member panel or the full Commission finds that an interlocutory order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, any party may petition the Appellate Court for permission to appeal the order. The procedure for obtaining the required Commission findings and the permission of the Appellate Court shall be governed by Supreme Court Rule 308, except the references to the 'trial court' shall be understood as referring to the Commission." 775 ILCS 5/8-111(B)(1) (West 2024).

¶ 24　Finally, page 12 of petitioner's opening brief quotes section 1-102(A) of the Act as requiring "vigorous enforcement" of antidiscrimination protections. Section 1-102(A) contains no such language. 775 ILCS 5/1-102(A) (West 2022).

¶ 25　　　　　　　　　　　　　2. False Case Citations

¶ 26　Petitioner's briefs also contain false case citations. One such case, "*Harris v. Illinois Human Rights Comm'n*, 2022 IL App (1st) 210454," does not exist at all. The citation 2022 IL App (1st) 210454-U leads to a criminal case named *People v. Riley-Palmer*.

¶ 27　In addition, petitioner quotes language that does not appear in the cases cited. For example, *Gusciara v. Lustig*, 346 Ill. App. 3d 1012 (2004), does not include a "definition of arbitrary and capricious action." *Village of Oak Lawn v. Illinois Human Rights Comm'n*, 133 Ill. App. 3d 221 (1985), does not define "substantial evidence" as "evidence a reasonable mind might accept as sufficient to support a conclusion." And *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992), does not describe a "reasoned consideration" standard for agency decisions.

¶ 28　Finally, petitioner cites cases that do not support the propositions of law for which petitioner cites them. For example, petitioner cites *Abrahamson* for the proposition that "[w]hether an administrative agency correctly applied the law is subject to *de novo* review." But *Abrahamson* does not mention *de novo* review. Petitioner also cites *Hall v. Naper Gold Hospitality, LLC*, 2012 IL App (2d) 111151, ¶ 7, to claim that "Illinois reviewing courts routinely decline to strike briefs where the issues presented are sufficiently clear to permit meaningful review." But paragraph 7 of *Hall* actually *supports* striking briefs as a sanction for noncompliance with Illinois Supreme Court rules. *Id.* ¶¶ 7, 15. Petitioner cites *Whipple v. Department of Rehabilitation Services*, 269 Ill. App.

3d 554 (1995), for the proposition that "[a]n appellate court's review of a Human Rights Commission order follows the same framework applicable under the Administrative Review Law," but *Whipple* says no such thing.

¶ 29                                  3. Improper Statement of Facts

¶ 30    Rule 341(h)(6) requires the appellant to include a statement of "the facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal." Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020).

¶ 31    Petitioner's statement of facts is improper because it cites her brief's appendix, not the record on appeal. See *Mead v. Board of Review of McHenry County*, 143 Ill. App. 3d 1088, 1092 (1986). We cannot consider materials in the appendix that are not in the record on appeal. *Pine Top Receivables of Illinois, LLC v. Transfercom, Ltd.*, 2017 IL App (1st) 161781, ¶ 2 n.1; *Oruta v. B.E.W.*, 2016 IL App (1st) 152735, ¶ 32.

¶ 32                                        4. Sanctions

¶ 33    Respondents request that we strike petitioner's brief and dismiss this appeal based on the violations of Rule 341(h) set out above. We have the authority to do so (*McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 1), but we generally exercise that authority only when the brief's deficiencies hinder our review (*Anderson Dundee 53, L.L.C. v. Terzakis*, 363 Ill. App. 3d 145, 152 (2005)). That is not the case here. We can rely on our own review of the record, the Act, and the Code to resolve this appeal. As we explain below, the record is sufficient to determine that the Department lacked jurisdiction over petitioner's charge. Citations of fictitious legal authority do not automatically justify striking a brief and dismissing an appeal. *In re Baby Boy*, 2025 IL App (4th)

241427, ¶ 126. Accordingly, we deny respondents' request to strike petitioner's brief and dismiss this appeal. However, we must address petitioner's attorney's pattern of presenting multiple fabricated quotes of statutory language and case citations.

¶ 34    Illinois appellate court decisions generally address fabricated quotations and citations under Illinois Supreme Court Rule 375 (eff. Feb. 1, 1994). See, *e.g.*, *Baby Boy*, 2025 IL App (4th) 241427, ¶¶ 114-15. Rule 375(a) provides that, "after reasonable notice and an opportunity to respond," a court may sanction a party or an attorney for "willfully fail[ing] to comply with the appeal rules." Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994). Sanctions may include barring a party from presenting a claim or defense, entering judgment against the party, dismissing the appeal, striking briefs, and monetary fines. *Id.* Rule 375(b) allows the court to sanction a party or an attorney for filing a frivolous appeal, including an appeal "not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). Courts have interpreted this to include relying on nonexistent legal authority. See, *e.g.*, *Baby Boy*, 2025 IL App (4th) 241427, ¶¶ 117-19. Sanctions may include paying the opposing party's damages, attorney fees, and costs. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). If the court initiates Rule 375(b) sanctions proceedings, it must require the offending party or attorney to show cause why sanctions should not be imposed before imposing the sanction. *Id.*

¶ 35                          a. Attorney Cole's Response

¶ 36    To comply with Rule 375(a)'s notice-and-hearing requirement and Rule 375(b)'s show cause procedure, courts have ordered parties and attorneys to (1) file written responses explaining the AI-hallucinated citations in their briefs, (2) appear at hearings to explain the hallucinated citations, or (3) do both. See, *e.g.*, *Baby Boy*, 2025 IL App (4th) 241427, ¶¶ 43-44 (written response

and in-person hearing); *In re S.M.*, 2025 IL App (4th) 250277-U, ¶ 29 (written response); *Pletcher v. Village of Libertyville Police Pension Board*, 2025 IL App (2d) 240416-U, ¶ 29 (in-person hearing).

¶ 37    On June 30, 2026, we ordered petitioner's attorney Mason Cole to file a response explaining the false quotations and citations in his briefs by July 14, 2026. Attorney Cole filed his response on July 2, 2026, 12 days early. His response concedes that all the quotations and citations set out above are false for the reasons we have explained. Attorney Cole states that he "frequently use[s] a premier corporate subscription of ChatGPT" to "synthesize complex matters," including this case. Attorney Cole claims that he "cross-referenced" every citation in his briefs "with Lexis-Nexis to avoid hallucinations." However, he "overlooked" that several of those citations either do not exist, like *Harris*, or do not stand for the propositions of law for which he cited them, like *Abrahamson* and *Gusciara*. Attorney Cole states that his "inability to properly verify the cites is a result of [his] inexperience in appellate court." He proposes that we fine him $1,000 for the nonexistent "citation" of *Harris* and "$500 for each of the misquoted and mis-stated propositions" of law. Our June 30, 2026, order also required attorney Cole to advise us whether he requested an in-person hearing on this matter. He did not request such a hearing.

¶ 38    Frustratingly, attorney Cole's response itself contains misstatements of law. Footnote 1 claims that "under 775 ILCS 5/7A-102(D)(2)(a), if the Director determines there is a lack of substantial evidence, the Department will dismiss the charge." The applicable version of section 7A-102 has no subsection (D)(2)(a). See 775 ILCS 5/7A-102 (West 2022). The legislature removed subsection (D)(2)(a) as of January 1, 2008. Pub. Act 95-243 (eff. Jan. 1, 2008) (amending 775 ILCS 5/7A-102). Moreover, the "substantial evidence" language attorney Cole purports to

quote appears in subsection (D)(3), not (D)(2). See 775 ILCS 5/7A-102(D)(3) (West 2022). And it addresses a scenario in which "the Director determines that there is *no* substantial evidence," not one in which "the Director determines there is *a lack of* substantial evidence," as attorney Cole claims. See *id.* So, in this one citation, attorney Cole cites a statutory subsection that no longer exists, attributes a quote to the wrong subsection, and then misquotes that subsection. Also in footnote 1, attorney Cole claims that section 7A-102(D)(2) includes the phrase "questions of credibility." It does not. *Id.* § 7A-102(D)(2). That language last appeared in a version of the statute effective until July 25, 2005. See 775 ILCS 5/7A-102(D)(2) (West 2004).

¶ 39    In addition, footnotes 3 and 4 directly quote several cases without using quotation marks. See, *e.g.*, *Hall*, 2012 IL App (2d) 111151, ¶ 15 ("noncompliance with the rules does not help us resolve appeals expeditiously"); *Gusciara*, 346 Ill. App. 3d at 1017 ("We will not disturb the chief legal counsel's decision to sustain the dismissal of a charge unless the decision was arbitrary, capricious, or an abuse of discretion."); *Whipple*, 269 Ill. App. 3d at 556 ("After a full evidentiary hearing before the Commission's ruling, a reviewing court should sustain the Commission's findings of fact as *prima facie* true and correct unless they are against the manifest weight of the evidence."); *Village of Oak Lawn*, 133 Ill. App. 3d at 224 ("the plaintiff must prove by a preponderance of the evidence that the legitimate reason offered by the employer was not its true reason, that is, a pretext, which merges with the plaintiff's ultimate burden of proving whether the employer unlawfully discriminated against her").

¶ 40    Finally, our June 30, 2026, order provided that, "[i]f attorney Cole contends that any of the case citations are accurate, he must include a pin cite to the page or paragraph where the proposition of law or quotation appears." A pin cite directs the reader to the exact location of

quoted language or a cited principle of law. Without a pin cite, we must search through an opinion to find the language or proposition cited. Attorney Cole did not follow this order. Six citations in his response have no pin cite. In the order they appear, these cases are *Webb v. Lustig*, 298 Ill. App. 3d 695 (1998); *Kalush v. Department of Human Rights Chief Legal Counsel*, 298 Ill. App. 3d 980 (1998); *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899 (2010); *Truger v. Department of Human Rights*, 293 Ill. App. 3d 851 (1997); *Erickson v. Knox County Wind Farm LLC*, 2024 IL App (4th) 230726; and *Medina Nursing Center, Inc. v. Health Facilities & Services Review Board*, 2013 IL App (4th) 120554.

¶ 41    In his response, attorney Cole says that he "want[s] to completely avoid legalese and speak directly to this Court." We will speak directly to him: this is unacceptable. Attorney Cole's response should have included scrupulously accurate and precise citations. Instead, it is yet another sloppy filing that misstates the law and creates more work for this court. We do not know why attorney Cole feels compelled to rush out obviously flawed filings, but this must stop. This type of lawyering is harming attorney Cole's clients, his own professional reputation, and this court's workflow.

¶ 42                              b. Basis for Sanctions

¶ 43    We find that sanctions are warranted. Cole violated Rule 341(h)(5) because his opening brief does not contain accurate quotations of the statutes involved in this appeal. See Ill. S. Ct. R. 341(h)(5) (eff. Oct. 1, 2020) ("In a case involving the construction or validity of a statute," the appellant's brief must include "the pertinent parts of the provision *verbatim*" (emphasis added)). We find that Cole's misconduct was willful. Respondents identified Cole's multiple misquotations of statutory law, yet Cole did not acknowledge those misstatements in his reply or seek leave to

amend his opening brief. On the contrary, his reply brief repeated the false quotation of section 7A-102(D)(2)'s supposed "full investigation" requirement and otherwise dismissed all misstatements of law as "technical deficiencies." Cole's reply brief shows that he intentionally persisted in his attempts to mislead the court. See *Baby Boy*, 2025 IL App (4th) 241427, ¶ 115. Because Cole willfully violated Rule 341(h)(5), he violated Rule 375(a), thereby warranting sanctions. See Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994).

¶ 44 Cole also violated Rule 375(b) because the arguments he raises on appeal are frivolous. An appeal is "frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). Arguments based on AI-hallucinated citations are frivolous because "citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law." (Internal quotation marks omitted.) *Baby Boy*, 2025 IL App (4th) 241427, ¶ 118. In this case, the Commission found that the Department lacked jurisdiction to investigate petitioner's charge of workplace racial discrimination because petitioner did not submit the EEOC's findings to the Department within 30 days of receiving them, which the Act and the Code required her to do. 775 ILCS 5/7A-102(A-1)(1)(iv) (West 2022); 56 Ill. Adm. Code 2520.490(a)(3), (d) (2014). This 30-day deadline is jurisdictional. *Walczak v. Human Rights Comm'n*, 2024 IL App (1st) 221497-U, ¶¶ 30-36. Attorney Cole does not argue that petitioner timely submitted the EEOC's findings to the Department or that the 30-day deadline should not be jurisdictional. Rather, his primary argument is that the Department violated its statutory duty to conduct a "full investigation," which supposedly comes from section 7A-102(D)(2) of the Act. But section 7A-102(D)(2) contains no

such requirement. The supposed "full investigation" requirement is a product of AI-hallucinated language. Therefore, attorney Cole's chief argument is based on fake statutory language and is frivolous. See *Baby Boy*, 2025 IL App (4th) 241427, ¶ 118. Attorney Cole also relies on fabricated statutory language to invoke this court's jurisdiction and argue that the Commission improperly denied petitioner's "motion to reconsider." While *an* appeal in this case may not be frivolous, at least in theory, the arguments attorney Cole makes in *this* appeal are frivolous because they are based on fabricated statutory language

¶ 45    Furthermore, submitting AI-hallucinated quotations and citations misrepresents the law to this court and violates the Illinois Rules of Professional Conduct. See Ill. R. Pro. Conduct (2010) R. 3.1 (eff. Jan. 1, 2010) ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law."); R. 3.3(a)(1) ("A lawyer shall not knowingly *** make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer ***."); R. 8.4(c) (eff. July 1, 2024) ("It is professional misconduct for a lawyer to" "engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."). Submitting AI-hallucinated citations also violates an attorney's duty to "provide competent representation to a client." Ill. R. Pro. Conduct (2010) R. 1.1 (eff. Jan. 1, 2010). Competent representation requires "keep[ing] abreast of changes in the law and its practice, including the benefits and risks associated with relevant technology." Ill. R. Pro. Conduct (2010) R. 1.1, Comment (eff. July 6, 2023); see ABA Comm. on Ethics & Pro. Resp., Formal Op. 512, at 2-3 (July 29, 2024), https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/ethics-

opinions/aba-formal-opinion-512.pdf [https://perma.cc/JYD9-SY63] ("To competently use a GAI tool in a client representation," "lawyers must have a reasonable understanding of the capabilities and limitations of the specific GAI technology that the lawyer might use.").

¶ 46    AI-hallucinated citations also violate our supreme court's policy on AI usage, which provides that attorneys "are accountable for their final work product" and "must thoroughly review AI-generated content before submitting it in any court proceeding to ensure accuracy and compliance with legal and ethical obligations." Ill. Sup. Ct., Illinois Supreme Court Policy on Artificial Intelligence (Jan. 1, 2025), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/e43964ab-8874-4b7a-be4e-63af019cb6f7/Illinois%20Supreme%20 Court%20AI%20Policy.pdf[https://perma.cc/WCE6-WZE5].

¶ 47    We impose sanctions based not only on principle but also because Cole's misconduct has forced respondents and this court to expend significant additional time and resources on this appeal. This court has had to (1) painstakingly distinguish fact from fiction in every citation in Cole's briefs, (2) research nationwide case law on sanctions for submitting false citations, (3) order Cole to file a response explaining his fabricated statutory citations and review that response, and (4) address this issue in this opinion. Cole's misconduct has delayed the resolution of this appeal, harming both his own client and respondents.

¶ 48    This court rejects any suggestion that AI hallucinations are just "technical deficiencies" or a fact of modern practice we must accept. "[N]o brief, pleading, motion, or any other paper filed in any court should contain *any* citations—whether provided by generative AI or any other source—that the attorney responsible for submitting the pleading has not personally read and

verified." (Emphasis in original.) *Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 5th 426, 430(Ct. App. 2025). The only acceptable standard is zero false citations.

¶ 49                                    c. Amount of Sanctions

¶ 50    We now consider the appropriate sanctions to impose in this case. In Illinois, the Fourth District has sanctioned attorneys who submitted AI-hallucinated citations by fining them $1,000 and reporting their misconduct to the Attorney Registration and Disciplinary Commission (ARDC). See, *e.g.*, *Baby Boy*, 2025 IL App (4th) 241427, ¶¶ 129-132; *S.M.*, 2025 IL App (4th) 250277-U, ¶ 34; *In re A.S.*, 2025 IL App (4th) 250298-U, ¶¶ 19-22. Last year, the circuit court of Cook County fined a law firm $59,500 for citing AI-hallucinated cases and holdings in a posttrial motion. Lizzie Kane, *Attorney and Law Firm for CHA Sanctioned Nearly $60,000 for Using ChatGPT in Court Case*, Chicago Sun-Times (Dec. 9, 2025, 5:00 a.m.), https://chicago.suntimes.com/the-watchdogs/2025/12/09/goldberg-segalla-law-firm-cha-sanctioned-60-000-ai-chatgpt-lead-paint-court-case [https://perma.cc/M2DR-VUDX]. Recently, the Seventh Circuit fined an attorney $5,000 for filing briefs containing "many AI hallucinations" and warned that "the next time any incident occurs, he could be subject to disbarment before this court." *Perez-Castillo v. Blanche*, 177 F.4th 837, 848 (7th Cir. 2026). The court also referred the matter to the ARDC. *Id.* at 849.

¶ 51    Courts in other jurisdictions have imposed stricter sanctions. For example, in a Sixth Circuit case, the appellant's briefs included dozens of fake citations and misrepresentations of fact. *Whiting v. City of Athens*, 170 F.4th 455, 458 (6th Cir. 2026). The court ordered the appellant's attorneys to file a response explaining these misrepresentations, and they refused. *Id.* at 459. The court found that the appeal was frivolous because the appellant's arguments were based on fake

cases and fabricated holdings. *Id.* at 461. The court sanctioned the attorneys by requiring them to pay the appellees' attorney fees and double their costs, as well $15,000 each in fines. *Id.* at 466-67. The court also ordered the clerk to forward the opinion to the chief judge for disciplinary proceedings. *Id.* at 467.

¶ 52    In *Noland*, an attorney filed appellate briefs "replete with fabricated quotes and citations." *Noland*, 336 Cal. Rptr. 5th at 911. In a written response to a show cause order, the attorney admitted that the fabricated quotes and citations were AI-generated. *Id.* At oral argument, he explained that he "enhanced" the briefs using ChatGPT but did not read them before filing them. *Id.* The court fined the attorney $10,000, ordered him to provide the opinion to his client, and ordered the clerk to forward the opinion to the state disciplinary authority for attorneys. *Id.* at 915.

¶ 53    In an Oregon federal court, an attorney filed briefs containing AI-hallucinated citations of 15 nonexistent cases and 8 fabricated quotations. *Couvrette v. Wisnovsky*, No. 21 CV 157, 2025 WL 4109655, at *1 (D. Or. Dec. 12, 2025). Following a show cause order and a sanctions hearing, the court struck the briefs, dismissed the attorney's client's claims with prejudice, fined the attorney $15,500, and awarded the opposing party attorney fees and costs. *Id.* at *15-16.

¶ 54    In the Central District of California, attorneys filed a brief with nine AI-hallucinated citations including two nonexistent cases and several fabricated quotations. *Lacey v. State Farm General Insurance Co.*, No. CV 24-5205, 2025 WL 1363069, at *1 (C.D. Cal. May 5, 2025). The court issued a show cause order, to which the offending attorneys responded in writing, and held a show cause hearing. *Id.* at *2. The court struck the offending briefs, ordered the attorneys to pay $26,100 in special master's costs, and awarded the opposing party $5,000 in attorney fees. *Id.* at *4-5.

¶ 55    Some federal courts have required attorneys who submitted AI-hallucinated citations to provide the orders sanctioning them to the judges in every pending case in which the attorneys had appearances. See, *e.g.*, *Rivera v. Triad Properties Corp.*, No. 2:24-cv-1802, 2026 WL 915744, at *34 (N.D. Ala. Mar. 31, 2026); *Disability Rights Mississippi v. Palmer Home for Children*, No. 24 CV 99, 2025 WL 3691876, at *21-22 (N.D. Miss. Dec. 19, 2015). At least one court has ordered an attorney to undergo continuing legal education on AI hallucinations. *Disability Rights Mississippi*, 2025 WL 3691876, at *22. And that same court has also barred *pro hac vice* attorneys from practicing before the court for two years as a sanction for submitting six AI-hallucinated cases. *Withers v. City of Aberdeen*, No. 24 CV 218, 2026 WL 1653484, at *1-2, 11 (N.D. Miss. June 8, 2026).

¶ 56    We order attorney Cole to pay a $15,000 fine to the clerk of the Appellate Court, First District, within 30 days of this opinion. See *Baby Boy*, 2025 IL App (4th) 241427, ¶ 130. We impose this sanction pursuant to Rule 375(a) and 375(b), both of which authorize monetary fines. Ill. S. Ct. R. 375(a), (b) (eff. Feb. 1, 1994). Attorney Cole's briefs contain a total of 10 false citations: 4 false statutory quotations, 1 nonexistent case, and 5 cases that exist but do not contain the cited principle or quoted language. This sanction reflects a $1,500 fine for each false citation and quotation.

¶ 57    We recognize that this rate is somewhat higher than what courts have imposed in the past. See, *e.g.*, *Couvrette*, 2025 WL 4109655, at *11 (fining attorney $1,000 per fabricated quotation and $500 per nonexistent case). But we set a rate of $1,500 per misstatement of law for two reasons. First, there is no meaningful difference between the various types of false citations and quotations. A fabricated quote, a nonexistent case, and a case that does not say what counsel claims

it says are all misstatements of law. They all require opposing counsel and this court to expend unnecessary time and effort addressing those misstatements of law. The fact that AI hallucinated these citations does not mitigate their falsehood. AI-hallucinated citations are no different than false citations an attorney could create from his own imagination. Therefore, the sanctions rate for all types of false citations and quotations should be the same, as the attorney, not AI, retains ultimate responsibility for what he or she submits to the court. Attorney Cole's response states that he uses a "premier corporate subscription of ChatGPT" (which is presumably a paid subscription) to draft filings. This case illustrates that, no matter how much one pays for "premier" or "corporate" versions of AI products, it does not negate an attorney's obligation to verify all citations of authority.

¶ 58    Second, as the cases set out above show, AI-hallucinated citations are an increasingly persistent problem in courts nationwide. This indicates that the fines courts are imposing are not enough to deter improper AI use among attorneys. In fact, the prospect of sanctions *in this case* did not deter attorney Cole from submitting outdated statutory citations and disobeying this court's order to include pin cites in his response. Courts have no choice but to increase fines for AI-hallucinated citations until those fines have a significant deterrent effect.

¶ 59    In addition, the clerk of the Appellate Court, First District, shall send a copy of this opinion to the ARDC. See *Baby Boy*, 2025 IL App (4th) 241427, ¶ 132. The Code of Judicial Conduct requires us to "inform the Illinois Attorney Registration and Disciplinary Commission" if "a lawyer has committed a violation of the Illinois Rules of Professional Conduct of 2010 that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Ill. Code Jud. Conduct (2023), Canon 2, R. 2.15(B) (eff. Jan. 1, 2023). Here,

attorney Cole repeatedly misrepresented the law to this court even after his opponent identified his misstatements to this court and even after being warned that the court was considering sanctions. Moreover, in his response, attorney Cole claims that his "inability to properly verify the cites is a result of [his] inexperience in appellate court." But attorneys verify citations the same way in every court, so this claim raises questions about attorney Cole's fitness to practice law generally.

¶ 60    We considered imposing additional nonmonetary sanctions on attorney Cole, such as ordering him to serve a copy of this opinion upon every judge who presides over a pending matter in which attorney Cole has an appearance. See *Rivera*, 2026 WL 915744, at *34; *Disability Rights Mississippi*, 2025 WL 3691876, at *21-22. We would impose this sanction not to embarrass attorney Cole but to protect our fellow courts, the orderly administration of justice, and attorney Cole's clients and opponents. Our overloaded court system must be able to trust that attorneys' submissions are accurate rather than fabricated. Other courts in which attorney Cole practices should not be at risk of accidentally deciding cases based on AI-hallucinated citations, nor should attorney Cole's clients or opponents be prejudiced by such submissions.

¶ 61    We also considered ordering attorney Cole to attend continuing legal education (CLE) on appropriate AI usage and proper citation of legal authority. See *Disability Rights Mississippi*, 2025 WL 3691876, at *22; see also *In re Martin*, 670 B.R. 636, 650 (Bankr. N.D. Ill. 2025) (ordering attorneys who submitted AI-hallucinated citations to attend an in-person CLE event on AI). We considered this sanction for two reasons. First, there is no dispute attorney Cole is using ChatGPT to draft briefs without verifying the citations and quotations it generates. He must learn how to use AI properly if he plans to use it in the future. More broadly, attorney Cole either does not have or does not employ fundamental cite-checking skills. For example, his July 2, 2026, response cites

statutes that are decades out of date just because equally old cases cited those statutes. Our legislature amends statutes frequently, so attorney Cole must learn how to ensure that he is citing the applicable versions of statutes. In addition, the response does not indicate whether it is quoting or paraphrasing case law, and it does not follow proper citation format. Attorney Cole must improve his citation skills, and CLE can help accomplish that.

¶ 62     However, it does not appear Rule 375 authorizes such sanctions. Rule 375(a) provides that "[a]ppropriate sanctions for violations of this section may include" barring a claim or defense, entering judgment for the opposing party, dismissal of the appeal, striking briefs, or fines. Ill. S. Ct. R. 375(a) (eff. Feb. 1, 1994). Rule 375(b) provides that "[a]ppropriate sanctions for violation of this section may include" paying the opposing party damages, attorney fees and costs incurred in the appeal, and fines (per the committee comments). Ill. S. Ct. R. 375(b), Committee Comments (approved Aug. 1, 1989). We have found no case law interpreting whether Rule 375's "may include" language means that the list of sanctions thereafter is exhaustive. We have found one case in which the court went beyond the sanctions listed in Rule 375 and ordered an attorney to attend six hours of CLE on professionalism for disparaging opposing counsel and the court in his filings. *Board of Managers of Northbrook Country Condominium Ass'n v. Speizer*, 2018 IL App (1st) 170868, ¶¶ 25-27. But the attorney did not challenge that sanction, and no case has followed *Speizer* in imposing sanctions beyond those listed in Rule 375, which contributes to our uncertainty about whether Rule 375's list of sanctions is exhaustive. In the interest of not exceeding our authority under Rule 375, we will not impose the additional nonmonetary sanctions discussed above, as much as we would like to do so.

¶ 63     That said, we strongly encourage attorney Cole to review every filing he has submitted in pending cases, to seek to withdraw those filings if they contain AI hallucinations, and to attend CLEs on proper AI usage and citation of authority as discussed above.

¶ 64     We now turn to the merits of this appeal.

¶ 65                                   B. The Department's Jurisdiction

¶ 66     The Commission affirmed the Department's dismissal of petitioner's charge for lack of jurisdiction because she did not submit the EEOC's determination to the Department within 30 days of receiving the EEOC's determination as required by section 7A-102(A-1)(1)(iv) of the Act. Petitioner challenges that ruling. Strictly speaking, the term "jurisdiction" does not apply to administrative agencies, but courts nevertheless use it to describe an administrative agency's authority to act. *Alvarado v. Industrial Comm'n*, 216 Ill. 2d 547, 554 (2005).

¶ 67     Whether an administrative agency had jurisdiction over a matter may be a question of law we review *de novo* (*Board of Education of Chicago v. Cady*, 369 Ill. App. 3d 486, 492 (2006)) or a mixed question of law and fact we review for clear error (*Jones v. Lockard*, 2011 IL App (3d) 100535, ¶¶ 16-17). *De novo* review is appropriate for this appeal because the parties do not dispute the procedural history of this administrative matter and they raise only legal issues regarding the Department's jurisdiction. See *Cigna v. Illinois Human Rights Comm'n*, 2020 IL App (1st) 190620, ¶ 23 ("The interpretation of statutes and regulations is a question of law, which we review *de novo*."); *Jones*, 2011 IL App (3d) 100535, ¶ 16 (*de novo* review applies where "our review hinges on the interpretation of the Act" alone (internal quotation marks omitted)). That said, we would affirm under any standard.

¶ 68    The Act provides that it is a civil rights violation for an employer to discipline or harass an employee based on her race. 775 ILCS 5/1-103(Q), 2-102(A) (West 2022). A complainant may file a charge of discrimination with both the Department and the EEOC, as petitioner did in this case. See *id.* § 7A-102(A-1)(1). In that scenario, the EEOC investigates the charge before the Department takes any action. *Id.*; 56 Ill. Adm. Code 2520.490(a)(1), (2) (2014).

> "In such cases, after receiving notice from the EEOC that a charge was filed, the Department shall notify the parties that (i) a charge has been received by the EEOC and has been sent to the Department for dual filing purposes; (ii) the EEOC is the governmental agency responsible for investigating the charge and that the investigation shall be conducted pursuant to the rules and procedures adopted by the EEOC; (iii) it will take no action on the charge until the EEOC issues its determination; (iv) *the complainant must submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on the complainant*; and (v) that the time period to investigate the charge contained in subsection (G) of this Section is tolled from the date on which the charge is filed with the EEOC until the EEOC issues its determination." (Emphasis added.) 775 ILCS 5/7A-102(A-1)(1) (West 2022).

¶ 69    Similarly, the Code provides that, "[w]ithin 30 days after receiving the final determination from the EEOC, the complainant must submit a copy of the EEOC's determination to the Department in order to preserve the complainant's rights under the Act." 56 Ill. Adm. Code 2520.490(a)(3) (2014). "If the complainant fails to submit a copy of the EEOC's final determination to the Department within 30 days after receipt of the EEOC's final determination, the Department may dismiss the charge for lack of jurisdiction." *Id.* § 2520.490(d).

¶ 70    There is no dispute that petitioner did not submit the EEOC's determination to the Department within 30 days of receiving it. Petitioner received the EEOC's determination on August 8, 2022. She first mentioned the EEOC's determination to the Department on December 19, 2022, and she submitted the EEOC's determination to the Department on January 30, 2023. Both events occurred after the 30-day deadline expired on September 7, 2022.

¶ 71    The question is whether that deprived the Department of jurisdiction over petitioner's charge. Case law on this issue holds that section 7A-102(A-1)(1)(iv)'s 30-day deadline for submitting the EEOC's determination to the Department is jurisdictional. *Walczak*, 2024 IL App (1st) 221497-U, ¶¶ 30-36; *Bumphus v. Illinois Human Rights Comm'n*, 2021 IL App (5th) 200037-U, ¶ 17; *Donald v. City of Chicago*, 539 F. Supp. 3d 912, 921 (N.D. Ill. 2021).[1]

¶ 72    Similarly, we hold that section 7A-102(A-1)(1)(iv)'s 30-day deadline is jurisdictional. Although the Act places this requirement in a list of items the Department must notify the complainant of, it unambiguously requires the complainant to "submit a copy of the EEOC's determination within 30 days after service of the determination by the EEOC on the complainant." 775 ILCS 5/7A-102(A-1)(1)(iv) (West 2022). This requirement is jurisdictional because "[a]n administrative agency's powers are limited to those granted by the legislature and any action taken by an agency must be authorized specifically by statute." *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2015 IL 117443, ¶ 16. Here, the statute provides that, when a complainant files charges with both the EEOC and the Department, the Department *cannot* act while the EEOC is investigating. 775 ILCS 5/7A-102(A-1)(1) (West 2022). The Department can act *only* when the

---

[1]We cite unpublished Rule 23 orders issued after January 1, 2021, and federal district court decisions as persuasive authority. Ill. S. Ct. R. 23(e)(1) (eff. June 3, 2025); *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2012 IL App (1st) 112321, ¶ 37 n.3.

EEOC finishes its investigation and the complainant timely submits the EEOC's determination to the Department. *Id.* ("the Department shall take no action until the EEOC makes a determination on the charge and after the complainant notifies the Department of the EEOC's determination"). The complainant timely submitting the EEOC's determination not only triggers the Department's investigation as a practical matter; it gives the Department authority to investigate. Therefore, that requirement is jurisdictional.

¶ 73    Put differently, if the Department investigates a dual-filed charge without receiving a timely submission of the EEOC's determination from the complainant, it exceeds its statutory authority. When an agency acts outside its statutory authority, it acts without jurisdiction. *Ferris, Thompson & Zweig*, 2015 IL 117443, ¶ 16. Petitioner did not submit the EEOC's finding to the Department within 30 days of August 8, 2022. Therefore, the Department did not have jurisdiction over her charge, and the Commission correctly sustained the dismissal on that basis.

¶ 74    *Walczak* guides our reasoning. In that case, the petitioner dual-filed an age discrimination charge with the EEOC and the Department on December 3, 2019. *Walczak*, 2024 IL App (1st) 221497-U, ¶¶ 3-4. On December 13, 2019, the EEOC dismissed the charge and issued a right to sue letter. *Id.* ¶ 5. On January 25, 2020, the petitioner mailed the EEOC's determination to the Department. *Id.* The Department initially dismissed the charge for a lack of substantial evidence, but on remand from the Commission, the Department concluded that it lacked jurisdiction because the petitioner did not submit the EEOC's findings within 30 days, in violation of section 7A-102(A-1)(1)(iv). *Id.* ¶¶ 7-9. The Commission sustained the dismissal on jurisdictional grounds. *Id.* ¶ 13. This court affirmed, finding that section 7A-102(A-1)(1)(iv)'s 30-day deadline is jurisdictional and the petitioner submitting the EEOC's determination 43 days after receiving it

deprived the Department of jurisdiction. *Id.* ¶¶ 29-30. This case involves an even longer delay in submitting the EEOC's determination to the Department: 175 days as compared to 43. The outcome should be the same: affirmance of the dismissal of the petitioner's charge due to the Department's lack of jurisdiction.

¶ 75    Our conclusion that section 7A-102(A-1)(1)(iv)'s 30-day deadline is jurisdictional is analogous to authority holding that section 7A-102(A)(1)'s deadline for initially filing a charge directly with the Department (as opposed to filing with the EEOC or dual-filing) is jurisdictional. See, *e.g.*, *Weatherly v. Human Rights Comm'n*, 338 Ill. App. 3d 433, 441 (2003); *Robinson v. Human Rights Comm'n*, 201 Ill. App. 3d 722, 727 (1990); *Pickering v. Human Rights Comm'n*, 146 Ill. App. 3d 340, 352 (1986). The key is that "compliance with [a] statutory time limit is a condition precedent to the right to seek a remedy" before an administrative agency and is necessary for the agency to have jurisdiction. *Weatherly*, 338 Ill. App. 3d at 437. That principle applies to section 7A-102(A-1)(1)(iv)'s 30-day deadline for submitting the EEOC's determination to the Department.

¶ 76    We acknowledge that the Code provides that, if "the Department does not receive notification from the EEOC that a charge has been filed until after the EEOC has already issued its final determination, the complainant shall have 30 days from receipt of the Department's notice to submit a copy of the EEOC's final determination to the Department." 56 Ill. Adm. Code 2520.409(e) (2014). This provision may suggest that petitioner had 30 days from the Department's January 11, 2023, letter to submit the EEOC's determination, so her January 30, 2023, submission was timely.[2] But this provision appears only in the Code; section 7A-102 of the Act contains no

---

[2]On the other hand, section 2520.490(e) applies only when "the Department does not receive notification from the EEOC that a charge has been filed until after the EEOC has already issued its final

such language. The Act gives the Department its authority (775 ILCS 5/7-101 (West 2022)), and we cannot import language that is not in the Act (see *Brunton v. Kruger*, 2015 IL 117663, ¶ 24).

¶ 77 Petitioner does not directly address section 7A-102(A-1)(1)(iv)'s 30-day deadline. Rather, she suggests we should equitably toll that deadline. She contends that the Department investigated her charge, held a hearing, and resolved the charge on the merits. Throughout that time, the Department never indicated that it might not have jurisdiction due to her untimely submission of the EEOC's decision. Nor did the Commission identify the jurisdictional issue in petitioner's first request for review. Rather, the Commission remanded petitioner's charge to the Department for consideration on the merits. Only when petitioner sought review before the Commission for the second time did the Department acknowledge that it did not have jurisdiction over her charge. The Commission then sustained the dismissal of petitioner's charge on jurisdictional grounds the Department itself never decided.

¶ 78 "Illinois courts have consistently held that time limitations upon bringing actions before administrative agencies are matters of jurisdiction which cannot be tolled." (Internal quotation marks omitted.) *Mercury Sightseeing Boats, Inc. v. County of Cook*, 2019 IL App (1st) 180439, ¶ 56. "Because the statutory language places limits on the agency's authority, parties seeking review of an agency decision must strictly comply with the procedures set forth in the statute." (Internal quotation marks omitted.) *Id.* Therefore, we cannot equitably toll the 30-day deadline. See *Walczak*, 2024 IL App (1st) 221497-U, ¶ 36 (principles of equitable tolling cannot extend the 30-day deadline under section 7A-102(A-1)(1)(iv)). However, we encourage the Department to

---

determination." 56 Ill. Adm. Code 2520.490(e) (2014). Here, the Department knew by July 11, 2022, that petitioner had filed dual-filed charges with both the EEOC and the Department. The EEOC issued its final determination on August 8, 2022. So, section 2520.490(e) may not apply to this case at all.

advise complainants of section 7A-102(A-1)(1)(iv)'s 30-day deadline *before* that deadline expires. Ideally, the Department should inform complainants of that deadline as soon as charges are dual filed even though the Department will take no action while the EEOC investigates.

¶ 79    Because we find that the Department lacked jurisdiction to investigate petitioner's charge, we do not consider her arguments regarding the evidence supporting it. Accordingly, we affirm the Commission's dismissal due to the Department's lack of jurisdiction.

¶ 80                                    III. CONCLUSION

¶ 81    For the foregoing reasons, we affirm the Commission's order dismissing petitioner's charge due to the Department's lack of jurisdiction.

¶ 82    Within 30 days of this opinion, attorney Mason Cole shall pay $15,000 as sanctions to the clerk of the Appellate Court, First District. The clerk of the Appellate Court, First District, shall send a copy of this opinion to the Illinois Attorney Registration and Disciplinary Commission.

¶ 83    Commission decision affirmed.

---

*Scott v. Illinois Human Rights Comm'n*, 2026 IL App (1st) 251462

---

| | |
|---|---|
| **Decision Under Review:** | Petition for review of order of Illinois Human Rights Commission, No. 2023-CR-0772. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Mason Cole, of Cole Sadkin, LLC, of Chicago, for petitioner. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Emily A. Vernon, Assistant Attorney General, of counsel), for respondents. |

---